UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FRANCIS YUNNI GUERRA PLEITEZ,

                   Petitioner,               Case No. 1:21-cv-507

v.                                      Honorable Paul L. Maloney

T. JOHNS et al.,

                   Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241. A court must promptly order an answer or grant the writ under § 2241, "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. After undertaking the review required by § 2243, the Court concludes that the petition must be dismissed, because Petitioner the Court does not have subject matter jurisdiction to consider Petitioner's requests for relief.

### Discussion

**I.     Factual allegations**

Petitioner Francis Yunni Guerra Pleitez is incarcerated at the North Lake Correctional Institution in Baldwin, Michigan. During the summer of 2015, in the United States District Court for the Southern District of Texas, Petitioner entered a guilty plea to one count of conspiracy to engage in sex trafficking of children by force, fraud, or coercion, in violation of 18 U.S.C. § 1594(c). *United States v. Pleitez*, No. 4:14-cr-497 (S.D. Tex.) (Plea Tr., Doc. 329.) On August 17, 2016, the court sentenced Petitioner to 210 months imprisonment. Petitioner filed an appeal regarding the restitution amount ordered by way of an amended judgment. The court of

appeals agreed with Petitioner and vacated the initial judgment and remanded for entry of the restitution amount originally agreed upon or appointment of counsel to permit Petitioner to litigate the restitution amount.  On December 12, 2017, the court issued an amended sentence that incorporated the restitution amount initially agreed upon;  the term of imprisonment, however, remained the same.

About a year after the amended judgment of sentence was entered, Petitioner filed a motion to vacate under 28 U.S.C. § 2255.  By order entered August 8, 2019, the court denied relief.

On September 17, 2020, Petitioner filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), raising the same issues he raises in the present petition.  By order entered September 25, 2020, the court denied relief.  On June 10, 2021, Petitioner filed this habeas corpus petition (ECF No. 1) and a supporting brief (ECF No. 3).

It does not appear that English is Petitioner's first language.  The petition is scattered and confusing.  Nonetheless, it appears that Petitioner seeks the very same relief that he sought by way of his motion for compassionate release filed in the United States District Court for the Southern District of Texas.  He contends that he is medically vulnerable, that the COVID-19 pandemic poses significant risks to his health and safety, and that the persons holding him in custody do not comply with Centers for Disease Control guidelines.  Petitioner also suggests that, because he is in a facility run privately by the Geo-Group, Inc. for the Federal Bureau of Prisons, he is held in conditions that are the equivalent of "modern slavery."  (Pet'r's Br., ECF No. 3, PageID.28.)

Petitioner asked the warden of his facility to seek compassionate release on his behalf.  That request was denied, in part because Petitioner is subject to a detainer order from Immigration and Customs Enforcement.  Upon Petitioner's release, he will be detained by ICE

pending his deportation.  This is certainly not a surprise to Petitioner.  He acknowledged that inevitable consequence as part of his plea in the Texas court.  He does not contend that the detainer was improperly or unconstitutionally lodged; but he does argue that denying him compassionate release because of the detainer violates his constitutional right to equal protection of the laws.  He identifies several other persons detained by the BOP who have been afforded compassionate release.

Moreover, Petitioner suggests that he, as an alien—even an alien in the country illegally—is entitled to due process.  He suggests that he has been denied due process; but he does not say how.  He specifically acknowledged in the Texas proceedings that he was not a citizen of the United States and that his plea would lead to his deportation.  *United States v. Pleitez*, No. 4:14-cr-497 (S.D. Tex.) (Plea Tr., Doc. 329, P. 6.)

## II.    Discussion

Section 2241 of Title 28, United States Code, limits the federal court's power to grant the writ of habeas corpus to five circumstances.  The only circumstance that applies to Petitioner is that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ."  28 U.S.C. § 2241(c)(3).[1]  Petitioner argues that the failure to give him the remedy of compassionate release or home confinement violates the Due Process Clause and the Equal Protection Clause, as well as the statutes that provide those remedies.  Petitioner's claims are not properly before this Court.

---

[1] Petitioner attacks the constitutionality of the discretionary decisions by the BOP and the Texas court.  The remedy would appropriately be reconsideration of Petitioner's application free of the alleged due process and equal protection violations that prompted the denial.  The Sixth Circuit Court of Appeals has concluded that requests for that type of relief by state prisoners are inappropriate under § 2254 because they do not demonstrate that the prisoner "is in custody due to a violation of federal law."  *Bailey v. Wainwright*, 951 F.3d 343, 346 (6th Cir. 2020).  Although the same reasoning would seem to apply to federal prisoners who claim they are in custody in violation of federal law under 28 U.S.C. § 2241(c)(3), the Sixth Circuit has held that it does not.  *Id.* (distinguishing between state and federal prisoners based on the court's earlier decision in *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009)).

In *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), the Sixth Circuit Court

of Appeals provided background regarding the "compassionate release" remedy that is helpful to

analysis of Petitioner's claims:

> The "compassionate release" provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in "extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A). For over three decades, § 3582(c)(1)(A) allowed only the Bureau of Prisons ("BOP") to file motions for compassionate release. Because the BOP rarely did so, few compassionate release cases reached the federal courts. This drought of compassion concluded in 2020, when the forces of law and nature collided. The First Step Act of 2018's provision allowing incarcerated persons to file their own § 3582(c)(1)(A) motions coupled with COVID-19's pernicious presence in federal prisons triggered a massive upswing in imprisoned persons seeking compassionate release; 10,940 persons applied for compassionate release in the first three months of the pandemic alone.[1] Michael Jones is one of these legion petitioners. Jones is serving a ten-year sentence at Federal Correctional Institution Elkton, where one out of every four imprisoned persons has tested positive for COVID-19.[2] In his § 3582(c)(1)(A) motion, Jones's medical ailments—which expose him to COVID-19-related health complications—comprise the crux of his request for a sentence reduction.
>
> The First Step Act and COVID-19 have redefined the compassionate release landscape. Because this court had little opportunity to examine compassionate release before this, technical questions regarding § 3582(c)(1)(A)'s requirements and standards of review long went unanswered. Our recent decision in *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020), unravels some of these mysteries. In lockstep with *Ruffin*, we hold that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry: district courts must "find" both that "extraordinary and compelling reasons warrant [a sentence] reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" before considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a). We resolve a debate that we first teed up in *Ruffin*, holding that U.S. Sentencing Guideline § 1B1.13 is not an "applicable" policy statement in cases where incarcerated persons file their own motions in district court for compassionate release. We also hold that the deferential abuse-of-discretion standard requires district courts to supply specific factual reasons for their compassionate release decisions.
>
> [1] *See* Keri Blakinger & Joseph Neff, *Thousands of Sick Federal Prisoners Sought Compassionate Release. 98 Percent Were Denied*, THE MARSHALL PROJECT (Oct. 7, 2020, 6:00 AM), https://www.themarshallproject.org/2020/10/07/thousands-of-sick-federal-prisoners-sought-compassio-nate-release-98-percent-were-denied (citing data provided by BOP showing that 10,940 federal prisoners applied for compassionate release between March and May 2020). The BOP has not provided data on how many

persons have filed for compassionate release since May 2020.  *See id.*  But the BOP updates its website every day with a running total of "Compassionate Releases / Reduction in Sentences" since the First Step Act's passage in December 2018.  *See* Federal Bureau of Prisons, First Step Act, https://www.bop.gov/inmates/fsa/index.jsp (last visited Nov. 2, 2020).  On November 2, 2020, BOP's website represented that there have been 1,992 grants since December 2018.  *Id*.  Because the Sentencing Commission has reported that there were twenty-four grants of compassionate release in 2018 and 145 grants in 2019*, see* U.S. SENT'G COMM'N, THE FIRST STEP ACT OF 2018: ONE YEAR OF IMPLEMENTATION (Aug. 2020) at 47 & n.143, we can safely assume that there has been an unprecedented surge in both filings and grants of compassionate release motions in 2020.

*Jones*, 980 F.3d at 1100–02 (some footnotes omitted).

Even though the First Step Act permits Petitioner to directly seek compassionate release from the district court, Petitioner is still required to first seek relief from the BOP.  18 U.S.C. § 3582(c)(1)(A).  Petitioner raises constitutional challenges that apply to both aspects of his quest for compassionate release—his attempt to get the BOP to seek compassionate release on Petitioner's behalf and, after the BOP declined, his request for that relief from the district court.  Neither decision, however, is reviewable under 28 U.S.C. § 2241.

In *Crowe v. United States*, 430 F. App'x 484 (6th Cir. 2011), the Sixth Circuit Court of Appeals concluded that "a federal court lacks authority to review a decision by the BOP to not seek a compassionate release for an inmate."  *Id*. at 485.  Moreover, the court specifically determined "that § 2241 does not provide subject matter jurisdiction" over a petition seeking to review the BOP's decision to not seek a compassionate release for an inmate.  *Id*. at 484.  The court agreed with the many courts that concluded "that the BOP's decision regarding whether or not to file a motion for compassionate release is judicially unreviewable."  *Id*. at 485.  Accordingly, Petitioner's challenge to the BOP's determination is properly dismissed.

Similarly, Petitioner's challenge to the Texas district court's denial of compassionate release is not properly before this Court.  "[O]nly the sentencing court is authorized to reduce a term of imprisonment [under] 18 U.S.C. § 3582(c)."  *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020).  "A district court reviewing a claim under § 2241 does not

have the authority to circumvent the established procedures governing the various forms of release enacted by Congress." *Id*. at 838.  Accordingly Petitioner's challenge to the Southern District of Texas court's denial of his motion for compassionate release is properly dismissed as well.

Petitioner also suggests that he has been inappropriately denied the possibility of "home confinement" or a "downward departure."  With regard to home confinement the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), "expand[ed] the power of the Bureau of Prisons to 'place a prisoner in home confinement' as an alternative to compassionate release." *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).  But, "the BOP has sole discretion to transfer an inmate to home confinement." *United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020) (citing 18 U.S.C. § 3621(b); 18 U.S.C. § 3624(c)(2)); *see also United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); *United States v. Blevins*, No. 1:17-cr-189, 2020 WL 6877220, at *2 (W.D. Mich. June 5, 2020) ("[T]he court does not have authority to dictate where a prisoner serves a sentence, such as home confinement.").  This Court has no authority to order home confinement under § 2241 or otherwise. *Bradley v. Hemingway*, No. 1:21-cv-10461, 2021 WL 2012839, at *3 (E.D. Mich. May 20, 2021).

Petitioner's suggestion that he is entitled to a downward departure is also not properly before the Court under § 2241.  A request for a downward departure is properly "raised on direct appeal or in a [28 U.S.C.] § 2255 motion." *Mattice*, 2020 WL 7587155, at *2 (internal quotes omitted).  Nonetheless, there are circumstances where an issue properly brought under

6

§ 2255 may be brought under § 2241.  Specifically, a prisoner may challenge the legality of his

detention under § 2241 if he falls within the "savings clause" of § 2255, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is
> authorized to apply for relief by motion pursuant to this section, shall not be
> entertained if it appears that the applicant has failed to apply for relief, by motion,
> to the court which sentenced him, or that such court has denied him relief, *unless
> it also appears that the remedy by motion is inadequate or ineffective to test the
> legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added); *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir.

2001).  Thus, through the § 2255 "savings clause" vehicle, a petitioner may seek habeas relief

under § 2241 where he can show that § 2255 provides an "inadequate or ineffective" means for

challenging the legality of his detention.

The Sixth Circuit has held that "'[t]he circumstances in which § 2255 is

inadequate and ineffective are narrow.'"  *Hill v. Masters,* 836 F.3d 591, 594 (6th Cir. 2016)

(quoting *Peterman*, 249 F.3d at 461).  As the court explained in *Charles v. Chandler*, 180 F.3d

753 (6th Cir. 1999), "[t]he remedy afforded under § 2241 is not an additional, alternative or

supplemental remedy to that prescribed under § 2255." *Id.* at 758 (citations omitted).  Section

2255 "is not 'inadequate or ineffective' merely because habeas relief has previously been denied,

a § 2255 motion is procedurally barred, or the petitioner has been denied permission to file a

successive motion.'"  *Hill*, 836 F.3d at 594.  Instead, the savings clause applies only where the

petitioner also demonstrates "actual innocence,"  *Peterman*, 249 F.3d at 461–62; *Charles v.*

*Chandler*, 180 F.3d 753, 757 (6th Cir. 1999), or "'a subsequent, retroactive change in statutory

interpretation by the Supreme Court,'" *Hueso v. Barnhart*, 948 F.3d 324, 332 (6th Cir. 2020)

(quoting *Hill*, 836 F.3d at 599–600).

The standard for demonstrating actual innocence, either directly or due to the

Supreme Court's interpretation of a statute, is exceedingly high and "ensures that [a] petitioner's

case is truly 'extraordinary . . . .'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). "'To establish actual innocence'" for the purposes of § 2255(e), a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Yet, as both the Supreme Court and Sixth Circuit have made clear, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *accord Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012).

Petitioner's challenge does not rest on a claim of actual innocence. His "downward departure" claim challenges only his sentence, not his conviction. Moreover, Petitioner does not identify any subsequent, retroactive change in statutory interpretation by the Supreme Court that might warrant revisiting his sentence by way of § 2241. Accordingly, Petitioner is not entitled to bring his "downward departure" request as a § 2241 challenge to his sentence under the savings clause of § 2255(e). And, once again, the Court does not have subject matter jurisdiction of the claim. *Taylor v. Owens*, 990 F.3d 493, 499 (6th Cir. 2021).

## Conclusion

The Court will enter a judgment dismissing the petition without prejudice. *Id*. (dismissal for lack of subject matter jurisdiction should be without prejudice). In § 2241 cases, the Court need not address whether to grant a certificate of appealability. *Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).


Dated:   August 19, 2021                            /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge